FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Feb 10, 2025

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| KEY TRONIC CORPORATION,<br><br>                          Plaintiff,<br><br>     v.<br><br>COGNITIVE LLC,<br><br>                          Defendant. | No.    2:24-CV-00249-RLP<br><br>ORDER GRANTING MOTION TO DISMISS IN PART AND DENYING IN PART |

Before the Court is Defendant Cognitive LLC's Motion to Dismiss, ECF No. 13, requesting dismissal of Plaintiff Key Tronic Corporation's complaint.  The Court heard oral argument on February 5, 2025.  Attorney Abigail Staggers appeared for Plaintiff Key Tronic Corporation and attorney Todd Adolphson appeared for Defendant Cognitive LLC.

Plaintiff Key Tronic Corporation and Defendant Cognitive LLC entered into a Manufacturing Services Agreement (MSA) in December 2020. Key Tronic agreed to manufacture and supply certain thermal printers for Cognitive. The MSA contains an

ORDER GRANTING MOTION TO DISMISS
IN PART AND DENYING IN PART ~ 1

initial price agreement, but also provides terms by which Key Tronic could increase the price if costs increased. Pursuant to the terms of the MSA, Key Tronic sent notice to Cognitive of a price increase. According to Key Tronic, Cognitive agreed to pay the increased price, later repudiated the agreement, and owed amounts remain unpaid. Key Tronic filed suit alleging Cognitive breached the MSA, asserting three causes of action for: (1) breach of contract and implied covenant of good faith and fair dealing; (2) breach of contractual duty to indemnify; and (3) promissory estoppel.

Defendant Cognitive moves to dismiss for failure to state a claim under FRCP 12(b)(6). Cognitive contends the Complaint alleges insufficient facts to support the claims. Specifically, Cognitive argues: (1) the MSA agreement and correspondence related to the claim must be considered; (2) the claim is not ripe under the terms of the MSA; (3) the Complaint contains insufficient allegations regarding claims for amounts for Aged and On-Hand Inventory, the price increase, the Purchase Price Variance (PPV) and repudiation of the contract; (4) the claim for breach of the duty of good faith and fair dealing does not allege any facts that are not part of the breach of contract claim; (5) the claim for indemnification is not allowed; (6) the claim for promissory estoppel is not allowed; and (7) the claim for incidental damages should be dismissed under the terms of the contract.

The Court GRANTS the motion to dismiss in part and DENIES in part. Key Tronic has alleged sufficient facts to make a plausible claim for breach of contract and implied covenant of good faith and fair dealing, for breach of the contractual duty to indemnify,

ORDER GRANTING MOTION TO DISMISS
IN PART AND DENYING IN PART ~ 2

and, alternatively, for promissory estoppel, and the motion to dismiss is DENIED as to those claims. The Court GRANTS the motion to dismiss regarding the request for incidental damages which are precluded by the contract.

BACKGROUND

Key Tronic is a contract manufacturing service provider located in Spokane Valley, Washington. ECF 1 at 1-2. Key Tronic specializes in full product assembly, molding, fabrication, and engineering services for complex electro-mechanical products. ECF No. 1 at 2, ¶ 2.1. Cognitive LLC is a provider of label, barcode, point of sale, and receipt printers located in Illinois. *Id.* At 1-2. In December 2020, Key Tronic and Cognitive entered into a Manufacturing Services Agreement (MSA), wherein Key Tronic agreed to supply certain thermal printers to Cognitive. *Id.* at ¶ 2.3; ECF No. 13 at 7.

According to the MSA, Cognitive agreed to provide Key Tronic with 12-month rolling forecasts for products, which would authorize Key Tronic to purchase needed parts and materials but would not be authorization to manufacture products. *Id.* at 2-3, ¶¶ 2.5, 2.6. Key Tronic agreed to provide notice to Cognitive of "Aged Inventory," consisting of parts and materials On-Hand for more than 90 days. Cognitive agreed, at Key Tronic's option, to either: (1) pay an immediate cash deposit in the amount of the Aged Inventory at cost plus ten percent, plus an inventory storage fee of two percent if Key Tronic retained possession; or (2) immediately purchase all of the Aged Inventory at cost plus ten percent, plus packing and shipping costs or scrap costs; or (3) immediately provide Key Tronic

ORDER GRANTING MOTION TO DISMISS
IN PART AND DENYING IN PART ~ 3

with a Proposed Purchase Order to consume the Aged Inventory into manufactured product within 30 days. *Id.*

The MSA also provides that either upon its own initiative or upon Cognitive's request, Key Tronic would from time to time provide to Cognitive a written Aged Inventory report detailing the Aged Inventory On-Hand. *Id.* at 3-4. Cognitive agreed to notify Key Tronic of any good faith disagreement regarding the Aged Inventory report within 10 days, and no response indicated acceptance of the report and the reasonableness of Key Tronic's management of the Aged Inventory. *Id.* Cognitive agreed that failure to provide written notice of any disagreement within 10 days waives the right to dispute the contents of the Aged Inventory report. *Id.*

The MSA requires payment of "all invoices for Products within sixty (60) days of the date of the invoice." ECF No. 14 at 11. The MSA contains an initial price agreement, but also provides terms by which Key Tronic could increase the price if costs increased. ECF No. 1 at 4, ¶ 2.8. Section 6e provides:

> If Supplier's costs are increased in any way . . . Supplier, at its option, shall prepare and deliver a price update to Buyer. Supplier will provide reasonable documentation to justify the price change. Supplier and Buyer must agree to any price changes in writing in an amendment to the Agreement or Accepted Purchaser Order as appropriate, such agreement will not be unreasonably withheld by Buyer. Notwithstanding any terms in this Agreement which may be to the contrary, any price updates or price increases shall not be applied retroactively to any Accepted Purchase Orders and/or any Purchase Orders previously submitted by the Buyer; and any price updates or price increases shall only apply going forward to any Purchase Orders not yet submitted by the Buyer at the time of the price update(s) or price increase(s), unless otherwise agreed to in writing by the Parties.

ORDER GRANTING MOTION TO DISMISS
IN PART AND DENYING IN PART ~ 4

*Id.*; ECF No. 14 at 11.

On January 26, 2023, pursuant to Section 6e of the MSA, Key Tronic sent notice of a price increase to Cognitive. ECF No. 1 at 5, ¶ 2.11. The parties disagree about whether there was agreement to the price increase and, to the extent there was an agreement, the date of its application to orders. ECF Nos. 13, 15. The relationship between the parties deteriorated as the parties corresponded about the price increase and related matters. ECF Nos. 13 at 7-9; 15 at 3-4.

In July 2024, Key Tronic filed a Complaint alleging Cognitive breached the MSA by failing to pay amounts that have been invoiced and are past due, including payments for Aged Inventory and amounts related to its price increase. ECF No. 1. Key Tronic alleges damages of:

- $263,641.50 for Aged Inventory;
- $97,469.87 for a Purchase Price Variance (pursuant to the price increase);
- $320,388.28 for invoiced products; and
- $596,508.32 for On-Hand Inventory; and
- Interest of one percent per month on overdue amounts;
- Storage costs of two percent per month for Aged Inventory and On-Hand Inventory;
- Costs to package and ship or scrap the Aged Inventory and On-Hand Inventory;
- Statutory interest as allowed;
- Incidental and consequential damages;
- Attorneys' fees and costs.

*Id.* at 13-14. Cognitive now moves to dismiss the complaint for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). ECF No. 13.

ORDER GRANTING MOTION TO DISMISS
IN PART AND DENYING IN PART ~ 5

## STANDARD OF REVIEW

Rule 12(b)(6) allows a party to move for dismissal if the plaintiff has failed to state a claim upon which relief can be granted. FRCP 12(b)(6). Dismissal under this rule is proper only if there is either a "lack of a cognizable legal theory" or "the absence of sufficient facts alleged under a cognizable legal theory." *Taylor v. Yee*, 780 F.3d 928, 935 (9th Cir. 2015); *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988). When considering a 12(b)(6) motion, the court accepts the allegations in the complaint as true and construes the pleading in the light most favorable to the party opposing the motion. *Lazy Y Ranch Ltd. v. Behrens*, 546 F.3d 580, 588 (9th Cir. 2008). However, this does not require the Court "to accept as true legal conclusions couched as factual allegations." *Parents for Privacy v. Barr*, 949 F.3d 1210, 1221 (9th Cir. 2020).

To survive a motion to dismiss, the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 127 S. Ct. 1955, 1959, 167 L. Ed. 2d 929 (2007); see also *Levitt v. Yelp! Inc.*, 765 F.3d 1123, 1135 (9th Cir. 2014) (requirements of notice pleading are met if plaintiff makes a short and plain statement of their claims). A claim is plausible on its face when "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009). The allegations must be enough to raise the right to relief above a speculative level. *Twombly*, 550 U.S. at 555. It is not enough that a

1  claim for relief be merely "possible" or "conceivable;" instead, it must be "plausible on its

2  face." *Id.* at 556.

3                                    ANALYSIS

4

5  I.    <u>Review of Records</u>

6         A Court's review of a motion to dismiss under FRCP 12(b)(6) is limited to the

7  complaint, documents incorporated by reference into the complaint, and documents of

8  which the Court may take judicial notice. *Khoja v. Orexigen Therapeutics Inc.*, 899 F.3d

9  988, 998 (9th Cir. 2018). "Even if a document is not attached to a complaint, it may be

10 incorporated by reference into a complaint if the plaintiff refers extensively to the

11 document or the document forms the basis of the plaintiff's claim." *United States v.*

12 *Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003). A document is not "outside" the complaint if

13 the complaint specifically refers to the document and if its authenticity is not questioned.

14 *Townsend v. Columbia Operations,* 667 F.2d 844, 848-49 (9th Cir. 1982); *Branch v.*

15 *Tunnell*, 14 F.3d 449, 453 (9th Cir. 1994), *overruled on other grounds by Galbraith v.*

16 *Cnty. of Santa Clara*, 307 F.3d 1119 (9th Cir. 2002). However, simply mentioning the

17 existence of a document is not sufficient to incorporate its contents. *Ritchie* at *id.*; *see*

18 *Khoja* at 1002.

19        Key Tronic's Complaint references and quotes the MSA multiple times. The MSA

20 is the underlying basis of this suit and Key Tronic appears to have no objection to the

21

22

23

24

25

26

27

28

ORDER GRANTING MOTION TO DISMISS
IN PART AND DENYING IN PART ~ 7

assertion that it is incorporated by reference.[1] Accordingly, the MSA which is submitted as Exhibit A to the Declaration of Mark L. Lorbiecki is considered by the Court.

The Complaint also refers to correspondence between the parties:

- ¶ 2.11: "on January 26, 2023, Key Tronic sent Cognitive notice of a price increase."
- ¶ 2.12: "Following negotiations between the parties, on May 25, 2023, Cognitive agreed to an increased price in writing: '[Cognitive] will agree to the new prices and settle the outstanding balance. [Cognitive] will update all Purchase Orders . . . and all new orders will reflect the new quoted prices.'"
- ¶ 2.13: "on January 26, 2024, [Key Tronic] issued an invoice for $97,469.87 for outstanding amount still owed . . ."
- ¶2.17: "On April 16, 2024, Key Tronic sent a demand letter to Cognitive . . . "
- ¶ 2.18: "In an April 19, 2024 written response, Cognitive repudiated its agreement to pay the Purchase Price Variance."

The issue is whether these references to correspondence in the Complaint mean email threads between the parties in Exhibits B, C-1, and C-2 are incorporated by reference. If so, the Court should consider them in evaluating Cognitive's motion.

Exhibit B consists of sixteen emails dated January 26, 2023, to March 30, 2023, between Key Tronic and Cognitive regarding Key Tronic's price increase. A January 26,

---

[1] Key Tronic made two redactions to quoted portions of the MSA in its complaint. ECF No. 1 at 2, 9. The reason for this is not apparent, and Key Tronic does not argue the MSA should be redacted or its consideration otherwise be limited.

ORDER GRANTING MOTION TO DISMISS
IN PART AND DENYING IN PART ~ 8

2023, email from Key Tronic is included in Exhibit B, but the attachment to the email is not included. No other email in Exhibit B is specifically referenced in the Complaint.

Exhibit C-1 consists of nine emails dated May 10, 2023, to May 30, 2023, further discussing the price increase and the dispute between the parties. A May 25, 2023, email from Cognitive is included in Exhibit C-1, but none of the other Exhibit C-1 emails are specifically referenced in the Complaint.

Exhibit C-2 consists of a letter dated May 10, 2023, from Key Tronic with an attachment summarizing the total price increase for products scheduled to be delivered. The letter and attachment are not specifically referenced in the Complaint.

Exhibit D consists of a January 26, 2024, invoice which is not referenced in the Complaint. The April 16 and April 19, 2024, correspondence referenced in the Complaint are not part of any Exhibit.

At most, the Complaint mentions two instances of correspondence which are included in Exhibits B and C-1: correspondence dated January 26, 2023, and May 25, 2023. The Complaint did not expressly reference email threads or any other correspondence or documents included in Exhibits B, C-1, C-2, or D. The Complaint alleges a price increase was communicated pursuant to the MSA, quotes language indicating Cognitive agreed to the price, and alleges its invoices based on that agreement have gone unpaid. Viewing these allegations in the light most favorable to Key Tronic, this

ORDER GRANTING MOTION TO DISMISS
IN PART AND DENYING IN PART ~ 9

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

is this is not the "rare case" where assessing the sufficiency of the claim requires the documents at issue be reviewed. *See Khoja*, 899 F.3d at 1002.

The Court concludes the documents in Exhibits B, C-1, C-2, and D are not incorporated by reference. The dispute between the parties has to do with the performance or non-performance of the provisions of the MSA, which may or may not be evidenced by the emails and other correspondence contained in the Exhibits. For purposes of Cognitive's Motion to Dismiss, Exhibits B, C-1, C-2 and D are outside of the Complaint and not part of the Court's review.[2]

II.    Ripeness

Cognitive alleges this matter is not ripe because Key Tronic has not complied with the dispute resolution provision of the MSA before commencing litigation. According to Cognitive, this means the Complaint does not and cannot contain sufficient allegations and must be dismissed. Key Tronic contends the MSA's dispute resolution provision is not a condition precedent to litigation. Alternatively, Key Tronic contends that if granted leave

---

[2] The Court could consider the May 25, 2023, in Exhibit C-1 incorporated by reference as it was quoted in the Complaint. However, given that the quotation is not itself disputed, and since it is only one email in a series of emails in Exhibit C-1, the Court declines to consider it for purposes of this motion.

ORDER GRANTING MOTION TO DISMISS
IN PART AND DENYING IN PART ~ 10

to amend the Complaint it could cure any purported deficiency with additional factual allegations.

The issue is whether the dispute resolution provision of the MSA means certain actions by Key Tronic are required before a lawsuit is ripe before the Court. Section 21a of the MSA states:

> **Attempt to Resolve Disputes.** Upon a Party's written notification to the other Party of a dispute, which notification must include a written explanation of the dispute and the material particulars of the notifying Party's position as to the dispute, each Party shall nominate one (1) executive representative with the authority to bind such Party. The nominated representatives shall meet not later than ten (10) business days thereafter to attempt in good faith to resolve the dispute and to produce written terms of settlement for the dispute (a "settlement agreement"). A settlement agreement executed by each executive representative shall serve as conclusive evidence of the resolution of such dispute. If the executive representatives do not produce and execute the settlement agreement within forty-five (45) days after the date of the first meeting or within a longer period agreed to by each executive representative, then, either Party may upon written notice to the other Party, pursue all its rights and remedies provided at law or equity or otherwise in this Agreement.

ECF No. 14 at 19.

The construction of a contract provision is a matter of law. *Tyrrell v. Farmers Ins. Co. of Washington,* 140 Wn.2d 129, 133, 994 P.2d 833 (2000). "Conditions precedent" are "those facts and events, occurring subsequently to the making of a valid contract, that must exist or occur before there is a right to immediate performance, before there is a breach of contract duty, before the usual judicial remedies are available." *Ross v. Harding,* 64 Wn.2d 231, 236, 391 P.2d 526 (1964). Whether a contract provision is a condition precedent to

ORDER GRANTING MOTION TO DISMISS
IN PART AND DENYING IN PART ~ 11

litigation or just a contractual obligation depends on the intent of the parties, and courts determine this intent from a fair and reasonable construction of the language used after considering all the surrounding circumstances. *See Koller v. Flerchinger,* 73 Wn.2d 857, 860, 441 P.2d 126 (1968). When it is doubtful whether words create a promise or an express condition, courts interpret them as creating a promise. *Ross,* 64 Wn.2d at 236. Intent to create a condition and not a promise is signaled by words such as "provided that," "on condition," "when," "so that," "while," "as soon as," and "after." *Jones Assoc. v. Eastside Properties,* 41 Wn. App. 462, 467, 704 P.2d 681 (1985); *Vogt v. Hovander,* 27 Wn. App. 168, 178, 616 P.2d 660 (1979); *Ross* at *id*.

Here, there is not express language establishing a condition precedent, nor are there words signaling a condition precedent was intended by the parties. Notably, Key Tronic points out the parties included a condition precedent elsewhere in the MSA,[3] indicating they know how to express a condition precedent when intended. ECF No. 15 at 9; *see* e.g., *Jones*, 41 Wn. App. at 468 (indicating "the preceding typewritten paragraph containing an express condition precedent . . . provides evidence of [defendant's] ability clearly and unambiguously to express a condition precedent to payment."). Despite Cognitive's contention that the MSA is "clear" about necessary actions before filing a lawsuit, ECF

---

[3] Section 2d of the MSA states that "[a]s a condition precedent" to manufacturing products, the buyer is to provide proposed purchase orders. EF No. 14 at 8.

ORDER GRANTING MOTION TO DISMISS
IN PART AND DENYING IN PART ~ 12

No. 17 at 7, it is not apparent the intent of the parties was to create a condition precedent to litigation within the meaning of the law. Thus, the Complaint is not dismissed for lack of ripeness.

III.    Pleading Regarding Aged Inventory and On-Hand Inventory

Cognitive contends Key Tronic did not plead sufficient facts supporting its claims regarding Aged Inventory and On-Hand Inventory because Key Tronic did not allege facts showing its acquisition of inventory was reasonable based on Cognitive's forecasts. The Complaint alleges that as contemplated by the MSA, Cognitive issued forecasts and purchase orders to manufacture product; that Key Tronic manufactured and delivered product and submitted invoices for payment; and "reasonably acquired a substantial inventory of parts and materials that are need for the Cognitive products."  ECF No. 1 at 4-5. According to Cognitive, Key Tronic must specifically show by its allegations that the Aged Inventory and On-Hand Inventory claims were reasonable.

The Court agrees with Key Tronic that Cognitive's argument is based on an overly exacting standard. A complaint will survive a motion to dismiss when it contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). Specific facts are not necessary; the statement need only give the defendant fair notice of what the claim is and the grounds upon which it rests. *Twombly*, 550 U.S. at 555. For purposes of this motion the Court accepts as true that Key Tronic's acquisition of substantial inventory of parts and

ORDER GRANTING MOTION TO DISMISS
IN PART AND DENYING IN PART ~ 13

materials is reasonable based on Cognitive's forecasts. In that case, the claim is plausible on its face. Whether Key Tronic's acquisition of inventory was in fact reasonable based on Cognitive's forecasts is not a matter to be determined pursuant to a motion to dismiss. The facts alleged are sufficient to survive the motion to dismiss.

IV.     Pleading Regarding Price Increase

Cognitive contends the Complaint relies upon a conclusory agreement to a price increase and, to the extent there was an agreement, Exhibits B, C-1, and C-2 demonstrate it was made under duress. Paragraph 2.2 of the Complaint alleges that on May 25, 2023, Cognitive "agreed to an increased price in writing" and quotes language from the alleged agreement.

First, the Court does not find the language of the Complaint conclusory. The quoted language states Cognitive "will agree to the new prices and settle the outstanding balance." ECF No. 1 at 6. Cognitive does not suggest that Key Tronic improperly quoted correspondence agreeing to a price increase, only that this was done under duress. This is sufficiently specific to form a plausible claim.

Second, ordinarily, affirmative defenses may not be raised by motion to dismiss unless there are no disputed issues of fact. *Scott v. Kuhlmann*, 746 F.2d 1377, 1378 (9th Cir. 1984). Cognitive's claim that duress is the basis of any purported agreement is a question of fact. Nothing in the Complaint shows that on its face, the defense of duress precludes recovery.

ORDER GRANTING MOTION TO DISMISS
IN PART AND DENYING IN PART ~ 14

Third, Cognitive relies on the contents of Exhibits B, C-1, and C-2 in support of its defense of duress. As previously stated, the Court does not consider those Exhibits for purposes of this motion as they were not incorporated by reference into the Complaint. Even if the Court did consider them, the question of duress in this case is an issue of interpretation of those records, which is a question of fact. Based on the foregoing, the pleading regarding price increase is sufficient.

## V.    Pleading Regarding Purchase Price Variance

Cognitive contends Key Tronic's claim for "Purchase Price Variance" (PPV) is not a term in the MSA and therefore cannot support a claim for damages. Cognitive also contends it cannot have repudiated the MSA by failing to pay PPV because the term "Purchase Price Variance" or "PPV" does not appear in the MSA. Key Tronic contends the PPV is defined in its Complaint at paragraph 2.13 as the amount Key Tronic calculated is still owed for the 2023 price increase after performing a reconciliation of Cognitive's account. The phrase "Purchase Price Variance" or "PPV" is used by Key Tronic as a shorthand expression of unpaid amounts owing due to price increases. The expression is adequately explained in the pleading and is sufficiently specific to put Cognitive on notice of the basis for its claim. The pleading regarding the claim for Purchase Price Variance is sufficient.

## VI.    Pleading Regarding Repudiation of the MSA

Cognitive contends Key Tronic improperly pleaded that Cognitive simultaneously agreed to and repudiated the same agreement. ECF No. 13 at 18 (citing ECF No. 1, ¶P

2.12, 2.18). Key Tronic contends Cognitive misread the Complaint and its allegations are not mutually exclusive. Paragraph 2.12 alleges Cognitive agreed to a price increase on May 25, 2023. Paragraph 2.18 alleges Cognitive repudiated the price increase agreement and the obligation to pay for Aged Inventory on April 19, 2024. The agreement and repudiation are alleged to have occurred almost a year apart. There is no inconsistency, and the pleading regarding repudiation is sufficient to survive the motion to dismiss.

VII.   Breach of Covenant of Good Faith and Fair Dealing

The parties agree that under Washington law, there is an implied duty of good faith and fair dealing in every contract. *Rekhter v. Dep't of Soc. and Health Servs.*, 180 Wn.2d 102, 111-12, 323 P.3d 1036 (2014).

> There is in every contract an implied duty of good faith and fair dealing. This duty obligates the parties to cooperate with each other so that each may obtain the full benefit of performance. However, the duty of good faith does not extend to obligate a party to accept a material change in the terms of its contract. Nor does it "inject substantive terms into the parties' contract". Rather, it requires only that the parties perform in good faith the obligations imposed by their agreement. Thus, the duty arises only in connection with terms agreed to by the parties.

*Badgett v. Sec. State Bank*, 116 Wn.2d 563, 569-70, 807 P.2d 356 (1991) (citations omitted).

The duty of good faith and fair dealing can arise even when there is no breach of an express contract term. *Id.* Examples of violations of the duty of good faith and fair dealing include: (1) evading the spirit of a bargain; (2) willfully rendering imperfect performance; (3) interfering with or fail to cooperate in the other party's performance; (4) abusing

ORDER GRANTING MOTION TO DISMISS
IN PART AND DENYING IN PART ~ 16

discretion granted under the contract; or (5) performing the contract without diligence. *Microsoft Corp. v. Motorola, Inc.*, 963 F.Supp. 2d 1176, 1184 (W.D. Wash. 2013).

Cognitive contends Key Tronic's Complaint is insufficient because "the allegations set out in the Complaint merely reallege a breach of contract which obviates the covenant of good faith and fair dealing as a distinct cause of action." ECF No. 13 at 20. Key Tronic contends the allegations in the Complaint indicate Cognitive's actions evade the spirit of the parties' bargain. The Complaint alleges Cognitive breached the duty of good faith and fair dealing by its continuing failure to pay Key Tronic's invoices. ECF No. 1 at 8-9, ¶ 3.9. The Complaint alleges Cognitive agreed to a price increase, then failed to pay the invoices reflecting the price increase, and later repudiated the agreement. ECF No. 1 at 5-6, ¶¶ 2.12, 2.13, 2.14, 2.18. Taking these allegations as true, the claim for breach of good faith and fair dealing is plausible. Thus, the claim survives the motion to dismiss.

VIII.   Equitable/Contractual Indemnity

Cognitive contends there is no indemnity in this case because the Complaint alleges a direct cause of action between two parties based on alleged breach of contract. Key Tronic argues the indemnification clause in the MSA provides for first-party indemnity. Paragraph 11 of the MSA provides:

> Unless otherwise stated in this Agreement, each party shall defend, indemnify and hold harmless the other party from and against all damages, claims, liabilities and expenses arising out of or resulting in any way from any act or omission of the indemnifying party . . . With respect to Supplier [Key Tronic], the indemnification obligation in this Section shall include, claims arising out of or resulting in any way from, exclusively, (a) a defect

ORDER GRANTING MOTION TO DISMISS
IN PART AND DENYING IN PART ~ 17

in Supplier supplies materials or workmanship, (b) Supplier's non-compliance with Buyer's specification; or (c) *Supplier's breach of any of the provisions of this Agreement.* Buyer's [Cognitive's] indemnification obligations shall include, but are not limited to damages, claims, liabilities, losses, judgments, duties, fines, civil penalties, costs and expenses arising out of or resulting in any way from (a) any products liability laws or statutes, unless covered exclusively under Supplier's indemnification obligations above, (b) any Product specifications or designs as provided by Buyer to Supplier under this Agreement; (c) any claim that the Product infringes any third party rights of any kind, including without limitation any patent, trade secret, copyright or trademark rights; or (d) *Buyer's breach of any of the provisions of this Agreement.*

(emphasis added). According to the MSA, each party agrees the indemnification obligation includes claims arising out of or resulting in any way from its breach of any of the provisions of the agreement.  The plain, unambiguous meaning of "indemnify" is not "to compensate for losses caused by third parties," but merely "to compensate." *Atari Corp. v. Ernst & Whinney*, 981 F.2d 1025, 1031–32 (9th Cir. 1992) (quoting BLACK'S LAW DICTIONARY 769 (6th ed. 1990)). *See also State v. Anderson*, 72 Wn. App. 253, 263, 868 P.2d 1370 (1993) (adopting Black's Law Dictionary's definition of indemnify). The parties could have limited indemnification obligations to claims from third parties, but did not do so. *See Atari*, 981 F.2d at 1031-32. By the terms of the MSA, the argument that the indemnification clause is only for payments to third parties is foreclosed. *Yang Ming Marine Transp. Corp. v. Okamoto Freighters Ltd.*, 259 F.3d 1086, 1092 (9th Cir. 2001). The contractual indemnity claim survives the motion to dismiss.

IX.    Promissory Estoppel

ORDER GRANTING MOTION TO DISMISS
IN PART AND DENYING IN PART ~ 18

The parties agree the doctrine of promissory estoppel does not apply where a contract governs. *Klinke v. Famous Recipe Fried Chicken, Inc.*, 94 Wn.2d 255, 261 n.4, 616 P.2d 644 (1980). However, FRCP 8(d)(2)-(3) expressly permits a party to plead alternative and even inconsistent claims. Key Tronic contends it makes a promissory estoppel claim in the alternative because: (1) Cognitive argues there is not an agreement as to a price increase; and (2) Cognitive "appears to dispute liability" for parts and materials acquired by Key Tronic for Cognitive products. According to Key Tronic, if the Court ultimately finds the MSA does not cover the pricing increase or liabilities for parts and materials, Key Tronic may alternatively argue recovery under a theory of promissory estoppel. At this point in the proceedings, the Court concludes dismissal of Key Tronic's alternative claim for promissory estoppel is not warranted.

X.    Incidental Damages

Key Tronic's Complaint requests incidental damages consisting of:

> Any commercially reasonable charges, expenses or commissions incurred in the ordering, transportation, care and custody of the products that Plaintiff acquired for Defendant's benefit, as authorized by RCW 62A.2-710 or the Agreement, including but not limited to storage costs of two percent (2%) per month for Aged inventory and On-Hand Inventory, and Key Tronic's costs to either package and ship to Cognitive, or scrap, the Aged Inventory and On-Hand Inventory.

ECF No. 1 at 13.

ORDER GRANTING MOTION TO DISMISS
IN PART AND DENYING IN PART ~ 19

Cognitive contends the request for incidental damages must be struck because the MSA limits liability and strictly prohibits incidental damages. Section 14.1 of the MSA provides:

> BUYER SHALL NOT BE LIABLE TO SUPPLIER FOR ANY INDIRECT, INCIDENTAL OR CONSEQUENTIAL DAMAGES WHATSOEVER RESULTING IN ANY WAY FROM THIS AGREEMENT, INCLUDING, WITHOUT LIMITATION, FOR LOST PROFITS OR LOST BUINESS, OR PUNITIVE OR SPECIAL DAMAGES, EVEN IF ADVISED OF THE POSSIBLIITY OF SUCH DAMAGES. SUPPLIER EXPRESSLY ACKNOWLEDGES THAT BUYER'S LIMITATIONS OF LIABILITY HEREIN ARE NOT UNCONSCIONABLE. THIS CLAUSE SHALL SURVIVE ANY TERMINATION OR EXPIRATION OF THIS AGREEMENT.

Key Tronic argues this limitation on liability is ambiguous because it conflicts with the indemnification clause. Section 11 of the MSA provides:

> Unless otherwise stated in this Agreement, each party shall defend, indemnify and hold harmless the other party from and against all damages, claims, liabilities and expenses arising out of or resulting in any way from any act or omission of the indemnifying party, its agents, employees or subcontractors.

Key Tronic points out the indemnification provision refers to "all damages," and argues this contradicts the limitations in the limitations of liability clause. According to Key Tronic, this is an ambiguity in the MSA which is fact-specific and cannot be resolved via motion to dismiss.

Cognitive argues the indemnification clause is by its terms subordinate to other clauses of the MSA, including the limitation of liability clause. The Court agrees with

ORDER GRANTING MOTION TO DISMISS
IN PART AND DENYING IN PART ~ 20

Cognitive. The phrase "[u]nless otherwise stated in this Agreement" indicates the indemnification clause is secondary to any other conflicting provision. The MSA is clear that indirect, incidental, and consequential damages "whatsoever resulting in any way" from the MSA are not available. Thus, Key Tronic's claim for incidental damages is dismissed.[4]

XI.    <u>Leave to Amend</u>

Key Tronic requests that if any portion of the Motion to Dismiss is granted it be granted leave to amend the Complaint to cure any deficiency. FRCP 15(a)(2) provides a party may amend its pleading with the leave of the court, which should be freely given when justice so requires. In this case, the claim for incidental damages is not a claim which can be cured by amending the Complaint.

ACCORDINGLY, IT IS HEREBY ORDERED: Defendant Cognitive's Motion to Dismiss **(ECF No. 13)** is **GRANTED in part and DENIED in part**. Plaintiff Key Tronic's claim for incidental damages is **DISMISSED** with prejudice. The motion to dismiss is **DENIED** as to Plaintiff's claims for breach of contract and implied covenant of good faith and fair dealing, for breach of the contractual duty to indemnify, and the

---

[4]This does not necessarily preclude Key Tronic's claim for storage costs and the package and ship or scrap costs to the extent they are not "incidental" damages and are otherwise recoverable under the terms of the contract.

ORDER GRANTING MOTION TO DISMISS
IN PART AND DENYING IN PART ~ 21

alternative claim for promissory estoppel. The parties may contact the Court if they agree mediation might be helpful. The District Court Executive is directed to enter this Order and furnish copies to counsel.

**DATED** February 10, 2025

REBECCA L. PENNELL
DISTRICT COURT JUDGE

ORDER GRANTING MOTION TO DISMISS
IN PART AND DENYING IN PART ~ 22